IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

CATHERINE WELLS,                          §
                                          §
                    *Plaintiff,*          §              SA-21-CV-00360-OLG
                                          §
vs.                                       §
                                          §
RED BANNER TRANSPORTATION,                §
LLC, SHAYNE WILLIAM STAYTON,              §
                                          §
                    *Defendants.*         §

**REPORT AND RECOMMENDATION AND ORDER
OF UNITED STATES MAGISTRATE JUDGE**

**To the Honorable United States District Judge Orlando L. Garcia:**

This Report and Recommendation and Order concerns the following five motions: Defendants' Opposed Motion to Exclude the Testimony of Plaintiff's Designated Expert Witness John Hall, M.D., and All Medical Providers Associated with Tri-City Pain Associates/Interventional Pain Management [#22], Defendants' Opposed Motion to Exclude the Testimony and Records of Plaintiff's Designated Expert Witness Raymond Fulp, III, D.O. [#23], Defendant Red Banner Transportation, LLC and William Shayne Stayton's Rule 56 Motion for Summary Judgment [#25], Plaintiff's Motion for a Continuance and Entry of a New Scheduling Order with Extensions for Discovery and to Designate Experts [#27], and Defendants' Opposed Motion to Exclude the Testimony and Records of Saqib Siddiqui, M.D. [#37]. The District Court referred this case to the undersigned for all pretrial proceedings pursuant to Western District of Texas Local Rule CV-72 and Appendix C on December 12, 2023 [#41]. The undersigned has authority to enter an order on Defendant's motions to exclude experts and Plaintiff's motion for a continuance pursuant to 28 U.S.C. § 636(b)(1)(A), and has authority to

1

enter a recommendation on Defendant's motion for summary judgment pursuant to 28 U.S.C. § 636(b)(1)(B).

The undersigned held a hearing on the non-dispositive motions on January 18, 2023, at which counsel for all parties appeared via videoconference.  In evaluating the merits of the motions, the undersigned considered the parties' respective responses and replies [#27, #29, #30, #31, #44[1]] and the parties' arguments at the hearing.  For the reasons set forth below, the Court will grant in part Defendants' motions to exclude Dr. Hall, the Tri-City Providers, and Dr. Fulp; deny Plaintiff's request for a continuance; dismiss Defendants' motion to exclude Dr. Siddiqui as moot; and recommend the District Court grant Defendants' motion for summary judgment as to all of Plaintiff's claims.

## I.  Background

This case arises out of a motor vehicle accident between a vehicle driven by Plaintiff Catherine Wells and a tractor-trailer driven by Defendant Shayne William Stayton in the course and scope of his employment with Defendant Red Banner Transportation ("Red Banner") on August 25, 2019.  Plaintiff's Original Petition alleges that she suffered serious neck and back injuries when Stayton suddenly backed his tractor trailer into the front of Plaintiff's vehicle. Plaintiff asserts claims of negligence, negligence per se, and gross negligence against Stayton and *respondeat superior* liability against Red Banner.

---

[1]  The undersigned notes that Plaintiff's response in opposition to Defendants' motions to exclude was filed on January 18, 2023, almost six months after the deadline to respond to the motions regarding Dr. Hall and Dr. Fulp and over two months after the deadline to respond to the motion regarding Dr. Siddiqui.  *See* W.D. Tex. Loc. R. CV-7(d).  The Court nonetheless reviewed the filing.  Plaintiff also filed a document entitled "Supplemental Suggestions in Support of Plaintiff's Motion for a Continuance and Entry of a New Scheduling Order" [#46] on January 24, 2023, several days after the Court's hearing.  The Court addresses the filing *infra*.

Plaintiff disclosed multiple medical providers as non-retained treating experts in this case. Plaintiff designated Dr. John Hall of Care For, PA, as an expert to testify regarding the general knowledge of Plaintiff's injuries and the evaluation and treatment thereof. (Pl.'s Expert Disclosures [#22-3], at 8.) Plaintiff designated Dr. Raymond Fulp, III, of San Antonio Healthcare Center as an expert to testify on her current treatment and medical needs and his assessment as to her need for surgical intervention. (*Id.* at 6.) And Plaintiff designated 13 medical providers at Tri-City Pain Associates/Interventional Pain Management ("Tri-City") as experts to testify about Plaintiff's injuries, diagnosis, and treatment. (*Id.* at 7.) Plaintiff's expert disclosure indicates that all of these providers "may testify" about the causation of Plaintiff's injuries and pain. (*Id.* at 6–9.)

Defendants now move to exclude the testimony and opinions of Dr. Hall, the Tri-City Providers, and Dr. Fulp pursuant to Rule 702 of the Federal Rules of Evidence and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), arguing that none of these providers can render a reliable opinion on the cause of Plaintiff's injuries. Defendants argue that Plaintiff's deposition testimony establishes that she did not share her complete medical information with any of these providers, and specifically, that they were not made aware that she suffered two car accidents, one on August 6, 2019, and the one at issue in this case on August 25, 2019.[2] According to Defendants, without knowledge of other possible contributing causes, these providers cannot reliably opine that the August 25, 2019 accident caused Plaintiff's injuries. In addition to moving to exclude the expert opinions of Dr. Hall, the Tri-City Providers, and Dr. Fulp, Defendants have moved for summary judgment, arguing that all of Plaintiff's claims should be dismissed for lack of causation evidence, and alternatively, that the gross negligence

---

[2] Plaintiff filed a separate lawsuit in state court regarding the first accident prior to filing the instant suit.

claim should be dismissed because Plaintiff cannot produce evidence that satisfies the standard for gross negligence.

In response to these motions, Plaintiff filed her motion for continuance, asking the Court for an extension of the expert disclosure deadline so that she can designate a current treating provider, Dr. Saqib Siddiqui, as an additional expert on medical causation; for time to conduct additional discovery; and for a continuance of the trial setting. Out of an abundance of caution in the event the Court were to permit Dr. Siddiqui to be designated as an expert, the parties agreed to complete his deposition on October 12, 2022. During the deposition, Dr. Siddiqui testified that he recommended two spinal surgeries to treat Plaintiff's injuries and that he believes Plaintiff's injuries "were caused by the two collisions and possibly—probably rather worsened by the—second collision." (Siddiqui Dep. [#37-3], at 83:3–84:12, 94:8–21.) Subject to their opposition to the requested continuances, Defendants have moved to exclude the testimony and records of Dr. Siddiqui, including his opinion on the cause of Plaintiff's injuries.

The undersigned now addresses each of the motions in turn.

## II.  Defendants' Motion to Exclude Dr. Hall, the Tri-City Providers, and Dr. Fulp

Defendants move to exclude Dr. Hall, the Tri-City Medical Providers, and Dr. Fulp as testifying experts in this case. Defendants argue that Plaintiff failed to comply with the requirements of Federal Rule Civil Procedure 26(a)(2)(C) when Plaintiff designated Dr. Hall, Dr. Fulp, and all other medical providers as experts and argue that the providers' medical causation opinions are unreliable and inadmissible under Rule 702 and *Daubert*. Because the undersigned concludes that Plaintiff has failed to satisfy her burden to prove the reliability of the experts' causation opinions, the Court need not address Defendants' argument regarding the inadequate expert disclosures under Rule 26(a)(2)(C).

4

A.      **Dr. Hall and the Tri-City Providers**

Plaintiff designated Dr. Hall as an expert who might testify as to the causation of Plaintiff's injuries and pain.  (Pl.'s Expert Designation [#22-3], at 8–9.)  Dr. Hall's deposition was never taken so there is no testimony in the record as to the specific nature of his possible medical causation testimony.  Defendants argue that any medical causation opinion by Dr. Hall is unreliable because there is no evidence that he knew that Plaintiff was in the accident underlying this lawsuit and was only informed about and was treating her for the earlier accident that occurred on August 6, 2019.  The undersigned agrees.

In *Daubert*, the Supreme Court held that trial judges must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable.  Subsequent to *Daubert*, Rule 702 of the Federal Rules of Evidence was amended to provide that a witness "qualified as an expert . . . may testify . . . in the form of an opinion . . . if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case."  *See Guy v. Crown Equipment Corp.*, 394 F.3d 320, 325 (5th Cir. 2004) (quoting Fed. R. Evid. 702).  The Rule 702 and *Daubert* analysis applies to all proposed expert testimony, including nonscientific "technical analysis" and other "specialized knowledge."  *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141 (1999).  When expert testimony is challenged under *Daubert*, the burden of proof rests with the party seeking to present the expert testimony.  *Moore v. Ashland Chemical, Inc.*, 151 F.3d 269 (5th Cir. 1998).  Therefore, faced with Defendants' *Daubert* challenge, Plaintiff bears the burden to prove by a preponderance of the evidence the reliability of his experts' medical causation opinions.

Plaintiff has not satisfied this burden.  The evidence before the Court establishes that Plaintiff sought treatment from Dr. Hall after the first accident for neck and low back pain on August 23, 2019, two days before her second accident.  (Pl. Dep. [#22-2], at 49:1–21, 65:18–66:7.)  These are the same injuries Plaintiff claims to have suffered from the second accident.  Although Dr. Hall's treatment continued after the second (August 25, 2019) accident, Plaintiff testified in her deposition that she never told Dr. Hall about the second accident.  (*Id.* at 72:24–72:1, 77:1–15.)  She also confirmed in her deposition that Dr. Hall's medical records from August 30, 2019—several days after the second accident—show a date of injury of August 6, 2019, the date of the first accident, and contain no reference to the second accident.  (*Id.*at 73:2–74:24.)

To offer reliable causation testimony, "medical causation experts must have *considered and excluded* other possible causes of injury."  *McNabney v. Lab Corp. of Am.*, 153 Fed. App'x 293, 295 (5th Cir. 2005) (emphasis in original).  "This does *not* necessitate an exhaustive search that forces an expert to 'disprov[e] or discredit[ ] every possible cause other than the one espoused by him,' but, an expert must be aware of the plaintiff's pertinent medical history.'"  *Id.* (quoting *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 423 (5th Cir. 1987) (emphasis and alterations in original)).  In *McNabney*, the Fifth Circuit affirmed the exclusion of the plaintiff's causation expert for his failure to exclude other possible causes of his injuries and unawareness of the plaintiff's past medical history, finding that the expert's "failure to consider and exclude other potential causes of [the plaintiff's] injury before offering an opinion renders his testimony unreliable."  *Id.*  Similarly, in *Viterbo*, the Fifth Circuit affirmed the exclusion of a causation expert's testimony for unreliability where the expert failed to take into account the plaintiff's

family medical history, as this information was not provided to the expert by the plaintiff.  826 F.2d at 423.

Plaintiff concedes that she never told Dr. Hall about the accident underlying this suit.  It is not possible for Dr. Hall to provide reliable medical causation testimony linking Plaintiff's injuries to the accident occurring on August 25, 2019, without knowledge that this accident even occurred.  The Court will therefore grant Defendants' motion to exclude Dr. Hall from testifying as to medical causation in this case.

Defendants' motion regarding Dr. Hall also asks the Court to exclude the Tri-City Providers identified in Plaintiff's expert designations from testifying as to causation.  Plaintiff designated 13 medical providers from Tri-City who might also testify about causation.  (Pl.'s Expert Designation [#22-3], at 7.)  As with Dr. Hall, none of these providers has been deposed, and there is no evidence regarding the nature of their possible causation opinions.  Defendants argue that any medical causation opinion of these providers is also unreliable because there is no evidence that the providers knew about the *first* accident.  The undersigned agrees with this argument as well.

The record establishes that Plaintiff sought treatment at Tri-City after her second accident and after finishing her treatment with Dr. Hall.  (Pl.'s Dep. [#22-2], at 110:11–111:10.)  Plaintiff testified in her deposition that she never told anyone at Tri-City about her prior treatment with Dr. Hall; never provided anyone at Tri-City with her records from Care For PA where Dr. Hall treated her; and never told anyone at Tri-City about the first accident.  (*Id.*)  In other words, Plaintiff failed to provide the Tri-City Providers with her pertinent medical history regarding her injuries.  Plaintiff has not presented the Court with any evidence that suggests her medical providers at Tri-City were otherwise aware of Plaintiff's first accident and prior treatment for

injuries to her back and neck. Accordingly, any testimony they might provide to the jury regarding medical causation is not reliable and has the potential to mislead the factfinder. The Court will also grant Defendants' motion to exclude as to the Tri-City Providers' medical causation opinions.

**B.     Dr. Fulp**

Plaintiff also designated Dr. Fulp of San Antonio Healthcare Center as possibly testifying regarding the causation of Plaintiff's injury. (Pl.'s Expert Designation [#22-3], at 6.) Dr. Fulp is an orthopedist who treated Plaintiff for her back and neck injuries after her second accident. Defendants ask the Court to exclude Dr. Fulp from testifying as an expert on any topic due to his failure to appear for his deposition. Defendants also ask the Court to exclude his opinions on medical causation as unreliable.

The Court faces the same scenario with respect to Dr. Fulp's causation opinion as with Dr. Hall and the Tri-City Providers. There is no indication in the record regarding the nature of Dr. Fulp's medical causation opinions, if any. His medical records document only one visit with Plaintiff on July 24, 2020, and reference only one of the two accidents—the second accident at issue in this suit. (Dr. Fulp Records [#24-1], at 11–16.) Plaintiff testified in her deposition that she never told Dr. Fulp about the first accident. (Pl.'s Dep. [#23-2], at 120:23–124:20.) And Dr. Fulp's medical records indicate that Plaintiff reported to him that she had "[n]o history of neck or back pain" prior to the accident with Stayton's 18-wheeler. (Fulp Records [#26-1], at 11.) She also conceded that she never provided him with any of the medical records related to treatment that she had from Dr. Hall at Care For PA. (Pl. Dep. [#23-2], at 124:21–24.) For the same reasons discussed above regarding Dr. Hall and the Tri-City Providers, the Court will exclude as unreliable any medical opinions from Dr. Fulp as to whether the second accident caused

Plaintiff's neck and back injuries and pain.  Plaintiff has failed to provide the Court with any evidence establishing that Dr. Fulp had knowledge of other possible causes of Plaintiff's injuries and is therefore unable to provide a reliable causation opinion to the factfinder.  In light of the foregoing, the Court need not address the requested sanction for Dr. Fulp's failure to appear at his deposition.  The Court will grant the motion to exclude Dr. Fulp as to any medical causation opinion.

### III.  Plaintiff's Motion for Continuance

Plaintiff's motion for continuance is embedded in her response to Defendants' motions to exclude Dr. Hall, the Tri-City providers, and Dr. Fulp and therefore was not docketed as a motion.  By her motion/response, Plaintiff asks the Court to extend the expert designation and discovery deadlines to allow Plaintiff to designate Dr. Siddiqui and any other providers to whom he might refer Plaintiff as additional treating experts, to take necessary expert depositions, and to mediate this case.  Plaintiff further asks the Court to abate its ruling on Defendants' motion for summary judgment to allow consideration of additional evidence she anticipates discovering if her extension request is granted.  (Plaintiff also asks that the trial setting to be continued for at least 90 days from August 29, 2022, but this request for relief is moot.  The District Court already continued the trial to April 10, 2023.)

The primary basis for Plaintiff's request for a continuance is her difficulty securing Dr. Fulp's participation and cooperation in this litigation.  The record reflects that Dr. Fulp failed to appear for his deposition on May 23, 2023, after the deposition already had been rescheduled and the Court compelled him to appear (on Defendants'—not Plaintiff's—motion), and failed to respond to the parties' attempts at contact and communication.  (Certificate of Non-Appearance [#23-7], at 2–3.)  Plaintiff's motion indicates that it was Dr. Fulp's lack of cooperation that led

her to consult with Dr. Siddiqui about her increased lower back pain and continued neck pain. Plaintiff argues that the testimony of Dr. Siddiqui is essential to her case because Plaintiff needs the expert testimony of one or more of her providers to establish causation for her injuries.  The Court will deny the motion.

Under this Court's Local Rules, unopposed discovery may continue after the deadline for discovery has expired, but "[a]bsent exceptional circumstances, no motions relating to discovery . . . shall be filed after the expiration of the discovery deadline, unless they are filed within 14 days after the discovery deadline and pertain to conduct occurring during the final 7 days of discovery."  W.D. Tex. Loc. R. CV-16(e).   The record reflects that the expert designation deadline in this case was February 14, 2022, and Plaintiff designated her expert witnesses on January 14, 2022.  The discovery period expired May 27, 2022.  Plaintiff filed her motion to continue, requesting an extension of these deadlines on June 29, 2022, over a month after the close of discovery (and several months after the expert-designation deadline).  Plaintiff's motion is untimely under the Court's Local Rules, and this case does not present "exceptional circumstances" that would warrant considering the out-of-time request to reopen discovery.

Additionally, under the Federal Rules of Civil Procedure, a scheduling order shall not be modified "except upon a showing of good cause."  Fed. R. Civ. P. 16(b).  The good-cause standard requires the party seeking relief "to show the deadlines cannot reasonably be met despite the diligence of the party needing the extension." *S & W Enters., L.L.C. v. Southtrust Bank of Ala.*, 315 F.3d 533, 535 (5th Cir. 2003).  In evaluating diligence, this Court considers (1) the explanation for the party's failure to meet the deadline or to timely move for leave to amend; (2) the importance of the amendment; (3) the potential prejudice if the Court allows the amendment; and (4) the availability of a continuance to cure such prejudice.  *Id.* at 536.

10

Plaintiff's motion does not establish that she has acted with diligence regarding the designation of additional experts to address medical causation and therefore does not establish good cause.

Previous court filings in this case demonstrate that Plaintiff's counsel began having issues communicating with Dr. Fulp's office regarding the scheduling of his deposition back in November and December 2021, months prior to the expiration of the expert disclosure deadline. (Emails [#13-1], at 1–10.)   Defendants subsequently put Plaintiff on notice that medical causation was going to be a legal and evidentiary issue in this case by questioning Plaintiff in her deposition on February 14, 2022, about whether she had been transparent with her medical providers about her complete medical history and the fact that there were two, not just one, car accidents in August 2019.   (Wells Dep. [#22-2], at 70:12–77:25.)   Yet, Plaintiff did not pursue any additional discovery, designate any new experts, or notice any expert depositions at this time or within the remaining three and a half months of the discovery period.

Also during the discovery period, Plaintiff was well aware of Defendants' persistent but unsuccessful efforts to secure Dr. Fulp's deposition, including requesting and obtaining an order compelling him to appear from the Court.   But Plaintiff did not designate a new expert or seek an extension of the deadline to do so at the time Dr. Fulp failed to appear.   Rather, Plaintiff waited to request a continuance to designate Dr. Siddiqui and conduct additional discovery until after the close of discovery, after Defendants moved to exclude her experts, and after Defendants filed their motion for summary judgment in which Defendants argued Plaintiff cannot establish causation due to issues regarding the reliability of her experts.   Allowing additional discovery after the discovery deadline has expired and an opponent has filed a summary judgment highlighting the evidentiary issues that should preclude a case going to trial would be unfair to

the summary judgment movant.  These circumstances certainly do not establish Plaintiff's due diligence or establish good cause for the requested continuances.

Plaintiff's latest filing— a "supplement" to her motion to continue, filed over seven months after the motion—argues that Plaintiff's ongoing treatment and recent spinal surgery with Dr. Siddiqui necessitate the requested amended scheduling order.  The filing still does not address the issue of Plaintiff's lack of diligence in requesting the deadline extensions in order to appoint a new expert to testify that the accident caused her beck and back injuries.  To demonstrate good cause, Plaintiff must show that she  could not meet the previous deadlines despite her diligence.  She has failed to make this showing.  Notably, if Plaintiff were just seeking to designate Dr. Siddiqui to testify about the nature of her injuries and costs associated medical procedures he performed, the Court would likely allow that.  But again, she is attempting to designate a new causation expert well after the deadlines for discovery and to designate experts have expired because the experts she originally designated have been successfully challenged by Defendant.

Additionally, Plaintiff has not informed the Court when she was first treated by Dr. Siddiqui and whether the treatment occurred before or after the expert designation deadline.  Even if Plaintiff did not begin treatment until after the expiration of the expert designation deadline, Plaintiff's motion does not address why she waited four months after her own deposition to seek the requested relief.  Finally, as noted above, Plaintiff has not provided the Court with evidence that Dr. Fulp rendered a causation opinion in her case, such that his lack of cooperation provides an extraordinary circumstance necessitating the designation of an additional causation expert.  There is no opinion about the cause of her back and neck injuries in Dr. Fulp's medical records.  (Fulp Medical Records [#24-1], at 1–16.)

In summary, Plaintiff has not established that she acted with diligence with respect to the designation of Dr. Siddiqui as an expert or that Dr. Fulp's lack of cooperation provides an extraordinary circumstance or good cause for the requested continuances. Rather, the record establishes that Plaintiff had earlier opportunities to pursue additional discovery and to address any issue with medical causation by designating or retaining other expert witnesses. Permitting Plaintiff to conduct out-of-time discovery to supplement her evidence, due to circumstances within her control and only after Defendants filed their motion for summary judgment, would cause significant prejudice. The Court will deny Plaintiff's motion.

## IV.  Defendants' Motion to Exclude Dr. Siddiqui

Defendants' motion to exclude Dr. Siddiqui was filed out of an abundance of caution were the Court to permit him to be designated as a testifying expert witness at trial. As the Court is denying the motion for a continuance, Dr. Siddiqui is not a designated expert in this case. Dr. Siddiqui may theoretically testify at trial as a treating fact witness but may not testify as to medical causation, which must be established by expert testimony admissible under Rule 702 and *Daubert*.  *See infra* at Section V.  In any event, because the lack of causation evidence means the Court must grant Defendant's summary judgment motion, the Court need not rule on the scope of other testimony Dr. Siddiqui could offer. Therefore, the Court will dismiss the motion as moot.

## V.  Defendants' Motion for Summary Judgment

Defendants move for summary judgment on all of Plaintiff's claims for two reasons. First, Defendants argue that Plaintiff's claims against Stayton fail as a matter of law because there is no expert testimony as to medical causation, which they argue is also fatal to her claims against Red Banner based on *respondeat superior* liability.  Second, Defendants argue that

Plaintiff has failed to raise a genuine issue of material fact as to gross negligence.  Because the lack of causation evidence is fatal to all of Plaintiff's claims, Defendants' motion for summary judgment should be granted and the Court need not reach Defendants' alternative argument for summary judgment on the gross negligence claim.

A.      **Summary Judgment Standard**

Summary judgment is appropriate under Rule 56 of the Federal Rules of Civil Procedure only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also* Fed. R. Civ. P. 56(c).  A dispute is genuine only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The party moving for summary judgment bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at 323.  Once the movant carries its burden, the burden shifts to the nonmoving party to establish the existence of a genuine issue for trial.  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Wise v. E.I. Dupont de Nemours & Co.*, 58 F.3d 193, 195 (5th Cir. 1995). The non-movant must respond to the motion by setting forth particular facts indicating that there is a genuine issue for trial.  *Miss. River Basin Alliance v. Westphal*, 230 F.3d 170, 174 (5th Cir. 2000). The parties may satisfy their respective burdens by tendering depositions, affidavits, and other competent evidence.  *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992).  The Court will view the summary judgment evidence in the light most favorable

14

to the non-movant. *Rosado v. Deters*, 5 F.3d 119, 123 (5th Cir. 1993). "After the non-movant has been given the opportunity to raise a genuine factual issue, if no reasonable juror could find for the non-movant, summary judgment will be granted." *Westphal*, 230 F.3d at 174.

## B.    Lack of Evidence as to Causation

Plaintiff asserts causes of action of negligence, negligence per se, and gross negligence against Stayton for conduct allegedly causing Plaintiff's injuries. Texas law governs the substance of Plaintiff's claims in this diversity action. *See Austin v. Kroger Tex. L.P.*, 746 F.3d 191, 196 (5th Cir. 2014) (per curiam). Proximate cause is an essential element of Plaintiff's negligence claims. *See W. Invs., Inc. v. Urena*, 162 S.W.3d 547, 550–51 (Tex. 2005); *Nabors Drilling, USA, Inc. v. Escoto*, 288 S.W.3d 401, 404 (Tex. 2009). Proximate cause has two elements—cause in fact and foreseeability. *Travis v. City of Mesquite*, 830 S.W.2d 94, 98 (Tex. 1992). Cause in fact means that the act or omission was a substantial factor in causing the injury without which the harm would not have occurred. *Marathon Corp. v. Pitzner*, 106 S.W.3d 724, 727 (Tex. 2003).

Defendants argue that expert testimony is required to prove that Plaintiff's back and neck injuries were caused by the accident occurring on August 25, 2019. State law determines whether expert testimony is required to prove proximate cause and medical causation. *Hamburger v. State Farm Mut. Auto. Ins. Co.*, 361 F.3d 875, 884 (5th Cir. 2004). Texas law requires expert testimony to establish causation where the question of causation is medically complex or outside the common knowledge and experience of jurors. *Guevara v. Ferrer*, 247 S.W.3d 662, 665–67 (Tex. 2007); *Leitch v. Hornsby*, 935 S.W.2d 114, 118–19 (Tex. 1996).

Without expert evidence, there are limited circumstances where the combination of the existence and nature of certain basic conditions, proof of a logical sequence of events, and

15

temporal proximity between an occurrence and the conditions are sufficient to support a jury finding of causation. *Guevara*, 247 S.W.3d at 667; *Kelley v. Witherspoon, LLP v. Hooper*, 401 S.W.3d 841 (Tex. App.—Dallas 2013, no pet.). A temporal relationship by itself does not prove a causal relationship. *Guevara*, 247 S.W.3d at 667. For non-expert evidence to be sufficient to support a finding of causation, both the occurrence and the conditions complained of must be such that general experience and common sense of laypersons are sufficient to evaluate the conditions and whether they were probably caused by the occurrence. *Id.* at 668.

For example, where a plaintiff suffers from a bone fracture or knee dislocation that did not previously exist immediately following an automobile accident, Texas courts have found that laypersons have the general experience and common sense to conclude that a causal connection exists between the accident and the injury. *Id.*; *Blankenship v. Mirick*, 984 S.W.2d 771, 776 (Tex. App.—Waco 1999, pet. denied). But here, Plaintiff's injuries are less straightforward, and the question of whether the first or second accident (or both) caused them makes the causation inquiry more complex.

Plaintiff complains of low back and neck pain due to disc herniations in her cervical and lumbar spine. Plaintiff testified in her deposition that prior to the first accident, she had never injured her neck or back. (Pl. Dep. [#25-1], at 139:7–24.) There is evidence that during the first accident, Plaintiff's car was rearended while at a complete stop by another vehicle. (Pl. Dep. [#22-2], at 44:4–45:2.) Plaintiff testified that the force of impact was so strong that it "sent [her] underneath the steering wheel . . . into the crouching position," such that she was not able to simply "unlatch [her] seatbelt and get out of the car." (*Id.* at 44:4–46:2.) According to Plaintiff, she started experiencing pain that evening or the next morning in her neck and all the way across her lower back. (*Id.* at 48:20–49:12.) After the accident, she called 9-1-1, but she did not seek

medical attention until the following day, when she went to the emergency room with her son for the neck and back pain. (*Id.* at 50:25–52:11.) Plaintiff testified that the pain was intermittent but was causing her to have difficulty sleeping and limited her range of motion. (*Id.* at 52:11–54:1.) According to Plaintiff, an x-ray was taken, and the doctors told her everything was fine and to take ibuprofen for the pain. (*Id.* at 54:5–13.) The pain, however, increased after this visit to the point that it was no longer manageable, and Plaintiff scheduled a follow up appointment with Dr. Hall at Care For PA, several days prior to her second accident. (*Id.* at 55:5–16, 64:24–65:5.) At that appointment, Plaintiff complained of moderate to severe throbbing pain and presented with spinous tenderness, restricted range of motion, and muscle spasms, as well as arm, hip, elbow, knee, and leg pain of a moderate to severe level. (*Id.* at 67:6–69:18.)

A crash report completed after the second accident on August 25, 2019, indicates that Stayton's tractor trailer backed into Plaintiff's vehicle and pushed her vehicle behind him until two witnesses ran up to the vehicle and advised Stayton to stop. (Crash Report [#25-1], at 15.) Plaintiff testified in her deposition that the only parts of her body injured during the second accident were her neck and lower back. (Pl. Dep. [#25-1], at 139:21–140:1.) Plaintiff testified further that during the second accident her head did not contact anything inside the vehicle aside from her headrest, such as the windshield or steering wheel. (*Id.* at 140:2–10.) An MRI taken after the second accident confirmed a disk herniation of her cervical spine and disk bulge in the lumbar spine. (Fulp Records [#26-1], at 15–16.)

Had there been only one car accident around the time of Plaintiff's medical treatment for back and neck pain, it might be possible for a layperson to conclude that the accident proximately caused Plaintiff's injuries. *See, e.g.*, *State Office of Risk Mgmt. v. Larkins*, 258 S.W.3d 686, 691 (Tex. App.—Waco 2008, no pet.) (explaining that employee who was pushed

into a wall and complained of lower back pain the next day to a doctor did not need expert testimony to prove her back injuries).  Yet here, there were two accidents, both of which Plaintiff alleges caused injuries to her back and neck.  Significantly, the record demonstrates that Plaintiff's pain became progressively worse in the days and weeks after the first accident, even before her second accident.  However, the only MRI imaging taken was after the second accident, so there is no image of the actual condition of Plaintiff's spine at any time prior to the accident at issue.  On this record, a layperson could perhaps find that the first accident was a proximate cause of Plaintiff's neck and back injuries based on the facts in the record and the layperson's general knowledge.  But expert testimony is required to establish that the second accident was also a substantial factor in causing the injury "without which the harm would not have occurred."  *Pitzner*, 106 S.W.3d at 727 (internal quotation and citation omitted).

Plaintiff's only designated experts on medical causation are Plaintiff's medical providers—Dr. Hall, the Tri-City Providers, and Dr. Fulp.  (Pl.'s Expert Designation [#22-3], at 6–9.)  The potential causation opinions of all of these providers have been excluded for lack of reliability due to Plaintiff's failure to disclose to her treating doctors that she was in two accidents in August 2019, either or both of which could be the proximate cause of her injuries.  Therefore, Plaintiff is unable to prove an essential element of her claims of negligence, negligence per se, and gross negligence.  Plaintiff's *respondeat superior* claim against Red Banner is entirely dependent on her proof of negligence by Stayton.  *See Goodyear Tire & Rubber v. Mayes*, 236 S.W.3d 754, 757 (Tex. 2007).  Because Plaintiff cannot prove causation as to her claims against Stayton, her claims against Red Banner also fail as a matter of law.

## VI.  Conclusion and Recommendation

Having considered the parties' motions, the responses and replies thereto, the evidentiary record, the arguments of counsel at the Court's hearing, and the governing law, the undersigned issues the following orders and recommendations:

**IT IS HEREBY ORDERED** that Defendants' Opposed Motion to Exclude the Testimony of Plaintiff's Designated Expert Witness John Hall, M.D., and All Medical Providers Associated with Tri-City Pain Associates/Interventional Pain Management [#22] and Defendants' Opposed Motion to Exclude the Testimony and Records of Plaintiff's Designated Expert Witness Raymond Fulp, III, D.O. [#23] are **GRANTED IN PART** as follows: Dr. Hall, the Tri-City Medical Providers, and Dr. Fulp are prohibited from offering expert opinion evidence as to whether the August 25, 2019 accident caused Plaintiff's alleged back and neck injuries.  In all other respects, the motions are **DISMISSED AS MOOT**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for a Continuance and Entry of a New Scheduling Order with Extensions for Discovery and to Designate Experts [#27] is **DENIED**.

**IT IS FURTHER ORDERED** that Defendants' Opposed Motion to Exclude the Testimony and Records of Saqib Siddiqui, M.D. [#37] is **DISMISSED AS MOOT**.

**IT IS FINALLY RECOMMENDED** that Defendant Red Banner Transportation, LLC and William Shayne Stayton's Rule 56 Motion for Summary Judgment [#25] be **GRANTED**, and summary judgment be rendered in Defendants' favor as to all of Plaintiff's claims.

## VII.  Instructions for Service and Notice of Right to Object/Appeal

The United States District Clerk shall serve a copy of this report and recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as

a "filing user" with the clerk of court, or (2) by mailing a copy to those not registered by certified mail, return receipt requested. Written objections to this report and recommendation must be filed **within fourteen (14) days** after being served with a copy of same, unless this time period is modified by the district court. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Objections are limited to no more than 20 pages unless leave of court is granted. The party shall file the objections with the Clerk of Court and serve the objections on all other parties. A party filing objections must specifically identify those findings, conclusions or recommendations to which objections are being made and the basis for such objections; the district court need not consider frivolous, conclusive or general objections. A party's failure to file written objections to the proposed findings, conclusions and recommendations contained in this report shall bar the party from a *de novo* determination by the district court. *Thomas v. Arn*, 474 U.S. 140, 149–52 (1985); *Acuña v. Brown & Root, Inc.,* 200 F.3d 335, 340 (5th Cir. 2000). Additionally, failure to file timely written objections to the proposed findings, conclusions and recommendations contained in this report and recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the un-objected-to proposed factual findings and legal conclusions accepted by the district court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

SIGNED this 26th day of January, 2023.

ELIZABETH S. ("BETSY") CHESTNEY
UNITED STATES MAGISTRATE JUDGE